**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1979
_____

PATRICIA YUISEL FLORES,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
Immigration Judge: Honorable Leo A. Finston
(A089-827-629)
_____

Argued: November 17, 2016

Before:  AMBRO, SHWARTZ, and FUENTES, *Circuit Judges*

(Opinion Filed: May 8, 2017)

Marcia Kasdan  **[ARGUED]**
Marcia S. Kasdan & Associates
127 Main Street, 1st Floor
Hackensack, NJ 07601

    *Attorney for Petitioner*


Jefferson B. Sessions III
United States Attorney General
Benjamin C. Mizer
Principal Deputy Assistant Attorney General
Douglas E. Ginsburg
Assistant Director
Thomas W. Hussey
Andrew B. Insenga  **[ARGUED]**
Karen L. Melnick
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

    *Attorneys for Respondent*

————————————

OPINION OF THE COURT
————————————


FUENTES, *Circuit Judge*.

Patricia Flores, a native and citizen of Guatemala, seeks review of a decision by the Board of Immigration Appeals ("BIA") that found her ineligible for withholding of

removal because she had been convicted of a "particularly serious crime"—namely, she was convicted of accessory after the fact in South Carolina for witnessing, but failing to report, a murder. Flores now petitions for review, contending that her South Carolina conviction does not constitute a "particularly serious crime" under our decision in *Denis v. Attorney General*, and that she should therefore be eligible for withholding of removal. We agree. Because Flores's South Carolina accessory-after-the-fact conviction is not an offense "relating to obstruction of justice," it cannot be considered either an "aggravated felony" or a "particularly serious crime" under the Immigration and Nationality Act ("INA"). Accordingly, Flores is eligible for withholding of removal.

## I.

Flores, a Guatemalan native, originally entered the United States with her husband to escape her abusive father. Although her husband traveled with a visa, she entered the country illegally. The two had a daughter together, but subsequently divorced, and Flores entered various relationships with other men and women.

According to the record on appeal, Flores traveled to South Carolina to visit family in late 2007. While there, she struck up a relationship with a young man, Fredy Sibrian. Unfortunately, this relationship soon deteriorated as Sibrian became increasingly "violent, jealous and possessive," causing Flores to leave Sibrian.[1] She then traveled to North Carolina, where she met, and started dating, another man, Antonio Perez. When Flores subsequently returned to South Carolina with Perez in April 2008, Sibrian confronted them at a gas station, causing a heated exchange that ended when

[1] App. at 316.

3

Sibrian shot and killed Perez. According to Flores, she did not immediately report the murder because Sibrian threatened to kill her and her then-three-year-old daughter if she disclosed Sibrian's actions to the police. Fearing Sibrian's retribution, Flores returned to North Carolina, but she was later arrested and sent back to South Carolina, where she was charged with Perez's murder.

Flores eventually pleaded guilty to accessory after the fact under South Carolina law[2] and was sentenced to five years' imprisonment. According to Flores's testimony, which the Immigration Judge ("IJ") found credible, she pleaded guilty to accessory after the fact because she failed to report the murder to police. The record does not reflect that Flores covered up the homicide, lied to police or prosecutors, or assisted the shooter in any way.

After serving about two years of her prison term, Flores was removed to Guatemala. A few months later, however, she re-entered the United States illegally. In 2015, following her arrest for prostitution, Flores was detained by Immigration and Customs Enforcement. During an asylum interview, she stated that she feared returning to Guatemala because: (1) her father, who had physically and sexually abused her as a child, wanted to kill her; (2) she had been raped by members of a local gang immediately following her previous removal to Guatemala; and (3) she feared that she would be persecuted because she is a lesbian. The asylum officer determined that Flores had a reasonable fear of persecution.

The case was referred to the Immigration Court where Flores filed an application for withholding of removal

---

[2] S.C. Code Ann. § 16-1-55.

4

and relief under the Convention Against Torture ("CAT"). The IJ made two primary findings with respect to Flores. First, the IJ found that Flores's conviction for accessory after the fact was a "particularly serious crime" under the INA, rendering her ineligible for withholding of removal. Second, the IJ found that Flores failed to adequately establish that she would, more likely than not, be subjected to torture in Guatemala, as required to obtain relief under CAT. Flores then appealed to the BIA.

The BIA dismissed the appeal and affirmed the IJ's decision on both grounds. First, relying on its own decisions and our holding in *Denis*,[3] the BIA concluded that Flores's accessory-after-the-fact conviction "relat[es] to obstruction of justice," and therefore constitutes a "particularly serious crime."[4] The BIA also concluded that Flores had not meaningfully challenged the denial of her CAT claim because she failed to produce any purported new evidence in support of her position.

## II.[5]

Flores now petitions for review of two BIA determinations: (1) that her accessory-after-the-fact conviction is a "particularly serious crime" rendering her

---

[3] 633 F.3d 201, 212-13 (3d Cir. 2011) (holding that a New York conviction for evidence tampering was "relat[ed] to" obstruction of justice within the meaning of the INA).

[4] App. 30.

[5] The BIA exercised appellate jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we exercise jurisdiction over Flores's petition for review pursuant to 8 U.S.C. § 1252(a)(1).

ineligible for withholding of removal,[6] and (2) that she did not meaningfully challenge the denial of her CAT claim.[7] We address each in turn.

## A.

The INA provides that the Attorney General "may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country."[8] However, such withholding of removal is unavailable if the alien committed a "particularly serious crime" because, in such a case, the alien is considered a "danger to the community of the United States."[9] A "particularly serious crime," under the INA, includes crimes that are considered "aggravated felon[ies]" for which the alien received a prison sentence of at least five years.[10] The INA's list of aggravated felonies, in turn, includes 21 descriptions of various offenses, including, as relevant here, "offense[s] relating to obstruction of justice, perjury or

---

[6] With respect to this question, we review the BIA's decision *de novo*. *Denis*, 633 F.3d at 209; *see also Restrepo v. Att'y Gen.*, 617 F.3d 787, 790 (3d Cir. 2010).

[7] With respect to this question, we review factual findings for substantial evidence, "which means we must uphold findings of fact unless the record evidence compels a contrary finding." *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 425 (3d Cir. 2011). We review legal conclusions *de novo*. *Id.*

[8] 8 U.S.C. § 1231(b)(3)(A).

[9] 8 U.S.C. § 1231(b)(3)(B)(ii).

[10] 8 U.S.C. § 1231(b)(3)(B).

subornation of perjury, or bribery of a witness" (the "Obstruction Provision").[11]  Because Flores was sentenced to five years for her accessory-after-the-fact conviction, the question before us is straightforward: is accessory after the fact "relat[ed] to obstruction of justice"?  We now answer that question in the negative.

1.

Our inquiry starts, as it must, with our decision in *Denis*.  There, we examined whether an alien's prior New York conviction for tampering with evidence was an "offense relating to obstruction of justice."[12]  In doing so, we first explained that we apply the categorical approach of statutory interpretation in determining whether a state conviction constitutes an aggravated felony (and thus a "particularly serious crime") under the INA.[13]  This approach involves a comparison between the statute of the alien's prior conviction and the relevant federal crime listed as an aggravated felony, without regard to the underlying facts of the petitioner's offense.[14]  If the elements of the alien's statute of conviction are broader than the elements of the aggravated felony crime, then the crime of conviction does not qualify as an aggravated felony.[15]  If, however, the elements of the statute of conviction are the same or narrower than the elements of the

---

[11] 8 U.S.C. § 1101(a)(43)(S).

[12] 633 F.3d 201 (3d Cir. 2011).

[13] *Id.* at 206 (citation omitted).

[14] *Restrepo*, 617 F.3d at 791.

[15] *Denis*, 633 F.3d at 206.

aggravated felony crime, then the crime of conviction qualifies as an aggravated felony.[16]

Importantly, unlike other contexts, *Denis* makes clear that, when applying the categorical approach, we do not strictly compare the elements of the statute of conviction to the elements of the Obstruction Provision's referenced offenses.[17] Instead, we apply a looser categorical approach in

---

[16] *Restrepo*, 617 F.3d at 791. We may sometimes look beyond the mere text of the state statute and employ a "modified categorical approach" if the statute is divisible—*i.e.*, it lists several elements in the alternative, thereby defining multiple crimes. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). In such a case, we may consult "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a[n alien] was convicted of." *Id.* Then, under the modified categorical approach, we perform the same comparison as under the categorical approach: if the elements of the crime of conviction are broader than the elements of the aggravated felony crime, then the crime of conviction does not qualify as an aggravated felony, and vice versa. *United States v. Brown*, 765 F.3d 185, 190 (3d Cir. 2014) ("The modified categorical approach still 'retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.' It simply allows a sentencing court 'to examine a limited class of documents to determine which of a statute's alternative *elements* formed the basis of the defendant's prior conviction.'" (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013))).

[17] *See, e.g.*, *Mathis*, 136 S. Ct. at 2250-51 (using a strict categorical approach to compare the elements of generic

8

light of the Obstruction Provision's statutory text, which states that aggravated felonies include any offense "*relating to* obstruction of justice."[18] Thus, "rather than ascertaining whether the elements of a [prior] crime of conviction match the elements of a generic federal offense with precision, we must only decide that the [prior] conviction 'relates to' the offense criminalized by [the Obstruction Provision], namely, obstruction of justice."[19] In other words, we "survey the interrelationship between the [crime committed and the relevant obstruction statute], and apply the phrase 'relating to' broadly, seeking a logical or causal connection."[20] As the "prime example" of this "causal connection," we remarked that "Section 510(b), which criminalizes the knowing exchange of stolen or forged Treasury instruments," is "related to" forgery, even though it lacks the "essential element" of an intent to defraud or deceive.[21] Similarly, we noted that a conviction for trafficking in counterfeit items

---

burglary and Iowa burglary under the Armed Career Criminal Act); *Descamps*, 133 S. Ct. at 2285 (using a strict categorical approach to compare the elements of generic burglary and California burglary under the Armed Career Criminal Act).

[18] *Denis*, 633 F.3d at 207 (emphasis in original).

[19] *Id.*

[20] *Id.* at 212 (alterations, internal quotation marks, and citations omitted).

[21] *Id.* at 211 (citing *Bobb v. Att'y Gen.*, 458 F.3d 213, 219-20 (3d Cir. 2006)).

constitutes an aggravated felony "relating to" counterfeiting in light of the connection between these two offenses.[22]

With those principles in mind, we then turned to Denis's prior New York conviction for tampering with evidence. In reviewing the Obstruction Provision, we explained that "Title 18 of the U.S. Code contains a listing of crimes entitled 'obstruction of justice,' permitting us to easily determine the types of conduct Congress intended the phrase to encompass."[23] Looking at that obstruction-of-justice section of the U.S. Code—Chapter 73, to be precise—we noted that § 1503 and § 1512(c)(1) were most relevant to Denis's conduct.[24] Section 1503 prohibits a person from "corruptly or by threats or force . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence,

---

[22] *Id.* (citing *Park v. Att'y Gen.*, 472 F.3d 66, 72 (3d Cir. 2006)).

[23] *Id.* at 209. In contrast to other circuits, we do not defer to the BIA's interpretation of the Obstruction Provision in making this determination. *Compare Denis*, 633 F.3d at 209, *with Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 815 (9th Cir. 2016) (noting that the Ninth Circuit had previously deferred to the BIA's interpretation of the obstruction provision but declining to do so in light of a subsequent BIA decision), *and Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004) (deferring to the BIA's interpretation of the obstruction provision); *see also Higgins v. Holder*, 677 F.3d 97, 103-04 (2d Cir. 2012) (acknowledging a circuit split on whether courts defer to the BIA's interpretation of the obstruction provision, but declining to weigh in).

[24] *Denis*, 633 F.3d at 212.

obstruct or impede, the due administration of justice."[25]  We explained that "Denis's conviction for tampering bears a close resemblance to the federal obstruction of justice offense defined in Section 1503" because "[b]oth Denis's crime of conviction and [the Obstruction Provision], by their terms, proscribe any behavior that entails the use of force in an effort to impede or obstruct an official proceeding, such as through evidence tampering."[26]  Likewise, § 1512(c)(1) prohibits the alteration, destruction, mutilation, or concealment of any object that would "impair the object's integrity or availability for use in an official proceeding."[27]  Section 1512(c)(1)'s "focus on destroying or mutilating evidentiary items in anticipation of their potential production in a prospective proceeding," we observed, "is directly analogous, and thus, logically connected to Denis's state crime of conviction."[28]  Accordingly, we held that New York's tampering-with-evidence offense "relat[es] to obstruction of justice" as defined in § 1503 and § 1512(c)(1), and therefore constituted an aggravated felony within the meaning of the INA.[29]

2.

The Government construes *Denis* expansively, seeking to extend that decision beyond its central holding in an effort to reach Flores's accessory-after-the-fact

---

[25] 18 U.S.C. § 1503(a).

[26] *Denis*, 633 F.3d at 212 (footnote omitted).

[27] 18 U.S.C. § 1512(c)(1).

[28] *Denis*, 633 F.3d at 213.

[29] *Id.*

11

conviction.[30] Specifically, the Government argues that: (1) we may use the federal accessory-after-the-fact statute, 18 U.S.C. § 3, as a suitable basis with which to compare Flores's accessory-after-the-fact conviction, rather than the obstruction-of-justice statutes in Chapter 73[31]; and (2) even setting aside the federal accessory-after-the-fact statute, Flores's conviction is connected to "a broad notion of 'obstruction of justice'" [32] and therefore falls within the Obstruction Provision's purview. We reject both contentions.

The Government first claims that we may look beyond Chapter 73 and compare Flores's conviction to the federal accessory-after-the-fact statute, § 3, in order to determine whether her offense "relat[es] to obstruction of

---

[30] While Flores's statute of conviction does not codify the elements of accessory after the fact, *see* S.C. Code Ann. § 16-1-55, the elements of this offense are well settled under South Carolina law. They are: "(1) the felony has been completed; (2) the accused must have knowledge that the principal committed the felony; and (3) the accused must harbor or assist the principal felon." *State v. Collins*, 495 S.E.2d 202, 204 (S.C. 1998). "The assistance or harboring rendered must be for the purpose of enabling the principal felon to escape detection or arrest." *State v. Legette*, 330 S.E.2d 293, 294 (S.C. 1985) (citations omitted).

[31] Resp't's Br. at 13; Resp't's Suppl. Br. at 3. That statute provides: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 18 U.S.C. § 3.

[32] Resp't's Br. at 12.

12

justice." Given the similarities between § 3 and South Carolina accessory after the fact, the Government argues, Flores's prior conviction constitutes obstruction of justice within the meaning of the INA.[33] This argument is unavailing for three reasons.

First, *Denis* straightforwardly tells us that we review Chapter 73 to determine whether an alien's prior offense "relat[es] to obstruction of justice." In that case, we scrutinized the Obstruction Provision and explicitly stated that we were "[e]xamining [the alien's] crime of conviction in relation to the federal obstruction of justice offenses codified in Section 1501 *et seq.* [*i.e.*, Chapter 73]."[34] Nothing in *Denis* remotely suggested searching the U.S. Code to discover other offenses that might qualify as obstruction-of-justice crimes.

Second, the text of the Obstruction Provision indicates Congress's intention to reference Chapter 73 and not, as the Government contends, § 3. The Obstruction Provision facially encompasses all "offense[s] relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness."[35] Importantly, both "perjury and subornation of perjury" and "bribery of a witness" reference specific chapters of Title 18 and, indeed, specific offenses codified therein.[36] The first phrase in the list, "obstruction of

---

[33] Resp't's Br. at 13.

[34] *Denis*, 633 F.3d at 212.

[35] 8 U.S.C. § 1101(a)(43)(S).

[36] *See* 18 U.S.C. § 201(b)(3)-(4) (criminalizing bribery of a witness in Chapter 11, "Bribery, Graft, and Conflicts of Interest"); 18 U.S.C. § 1621(1) (criminalizing perjury in

13

justice," seems to follow this same pattern: while it is not tied to any specific statute, it is identical to the title of Chapter 73, labeled "Obstruction of Justice." As the Supreme Court has recognized, "[t]itles can be useful devices to resolve doubt about the meaning of a statute," especially where, as here, other aspects of the statute indicate the same result.[37] Given Congress's linking of the textually adjacent terms—"perjury and subornation of perjury" and "bribery of a witness"—with their respective chapters, it seems odd that Congress would not similarly link the first term in the list, "obstruction of justice," with its identically named chapter. We therefore do not believe Congress engaged in such tortuous drafting.

Third and relatedly, Congress codified its own accessory-after-the-fact statute at 18 U.S.C. § 3, but it placed that statute *outside* the provisions related to obstruction of justice.[38] If Congress considered § 3 an obstruction-of-justice

---

Chapter 79, "Perjury"); 18 U.S.C. § 1622 (criminalizing subornation of perjury in Chapter 79, "Perjury").

[37] *Yates v. United States*, 135 S. Ct. 1074, 1090 (2015) (Alito, J., concurring) (internal quotation marks and citations omitted).

[38] The Government observes that "the Court does not give weight to *where* a statute is codified unless Congress (as opposed to the Office of the Law Revision Counsel) intentionally placed each statute." Resp't's Suppl. Br. at 3 (citing *United States v. Welden*, 377 U.S. 95, 98-99 n.4 (1964)). True enough. But this proposition is of no moment because Title 18 was enacted as positive law and accordingly approved by Congress. *See United States v. Loniello*, 610

14

offense, it presumably would have placed that statute in Chapter 73, entitled "Obstruction of Justice," or referenced § 3 in the Obstruction Provision. It did neither.

Thus, we decline the Government's invitation to look at the federal accessory-after-the-fact offense, 18 U.S.C. § 3,[39] in determining whether Flores's offense "relat[es] to obstruction of justice."

The Government also argues that, even setting aside § 3, Flores's conviction is connected to "a broad notion of 'obstruction of justice'" and therefore falls within the Obstruction Provision's purview.[40] This argument raises a

---

F.3d 488, 492 (7th Cir. 2010) (noting Title 18's enactment in positive law); *United States v. Falvey*, 676 F.2d 871, 874 (1st Cir. 1982) (same); *United States v. Watson*, 570 F.2d 282, 284 (8th Cir. 1978) ("Congress has [] enacted Title 18 into positive law as codified.").

[39] Even if we were to search beyond Chapter 73 for relevant offenses, Flores's South Carolina conviction is arguably more analogous to the federal misprision-of-felony offense, 18 U.S.C. § 4, than to the federal accessory-after-the-fact offense, 18 U.S.C. § 3. It is therefore far from certain that the Government would prevail were we to accept its argument. *In Re Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 894-96 (BIA 1999) (distinguishing between § 3 and § 4 and finding that the former "relat[es] to obstruction of justice" while the latter does not).

[40] Resp't's Br. at 12.

broader question: how close a connection is required between an alien's prior offense and "obstruction of justice" such that the former may be considered "relating to obstruction of justice"? We answered that question in *Denis* and we reiterate that holding today: an analysis of specific statutes must be employed to determine whether a "logical or causal connection" exists between an alien's prior offense and a Chapter 73 offense.

Our case law identifies a spectrum of possible connections that may be made between an alien's prior offense and some federal offense. On one end of the spectrum, we could require a precise match between the elements of alien's prior offense and the elements of one specific federal offense. We rejected this approach in *Park*, where we faced the question of whether an alien's prior offense for trafficking counterfeited goods under 18 U.S.C. § 2320 was an aggravated felony "relating to . . . counterfeiting." The alien sought to compare his § 2320 conviction with one particular statute, 18 U.S.C. § 471, which "criminalizes falsely making, forging, counterfeiting, or altering any obligation or other security of the United States with intent to defraud."[41] But we precluded such an analysis, noting that the INA's description of offenses "relating to . . . counterfeiting" required us to look beyond one statute and instead examine a class of criminal statutes related to counterfeiting.[42]

---

[41] *Park v. Att'y Gen.*, 472 F.3d 66, 71 (3d Cir. 2006) (internal alterations and quotation marks omitted).

[42] *Id.* at 71-72; *see also Kamagate v. Ashcroft*, 385 F.3d 144, 154 (2d Cir. 2004) (noting that, in the context of "offense[s] 'relating to' . . . counterfeiting," the term "relating to" is

On the other end of the spectrum, we could, as the Government urges, merely require some connection to "broad notions" derived from federal offenses. But this approach was rejected by *Denis* and would otherwise engender uncertainty among those tasked with applying it. Indeed, the Ninth Circuit rejected a similar interpretation of the Obstruction Provision in *Valenzuela Gallardo v. Lynch*.[43] That case confronted a new BIA explanation of the Obstruction Provision, which stated that, to qualify as an aggravated felony, accessory-after-the-fact convictions must only involve the "affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice," regardless of the existence of an ongoing investigation or proceeding.[44] The Ninth Circuit declined to follow this interpretation because it "raises serious constitutional concerns about whether the statute is unconstitutionally vague."[45] Specifically, the court found that this "construction leaves grave uncertainty about the plethora of steps before and after an 'ongoing criminal investigation or trial' that comprise 'the process of justice,' and, hence,

---

used "to define aggravated felonies by reference to the *general subject* of the offense of conviction, suggesting Congress's intent to reach more broadly than any single statute" (emphasis added)).

[43] 818 F.3d 808, 812 (9th Cir. 2016).

[44] *Id.* at 819 (quoting *In re Valenzuela Gallardo*, 25 I. & N. Dec. 838, 842 (BIA 2012)).

[45] *Id.* at 811.

uncertainty about which crimes constitute 'obstruction of justice.'"[46]  While the Ninth Circuit's decision is not wholly applicable to our case,[47] its point is well taken: adopting a construction of the Obstruction Provision that reaches unknowable offenses [48] based on "broad notion[s] of 'obstruction of justice'" causes confusion for courts, puzzlement for practitioners, and incomprehension for immigrants.[49]

---

[46] *Id.* at 820 (quoting *Valenzuela Gallardo*, 25 I. & N. Dec. at 842).  This would not only leave courts "unable to determine what crimes make a criminal defendant deportable under [the Obstruction Provision] and what crimes do not," but would also leave "defense lawyers . . . unable to accurately advise their clients about the immigration-related consequences of a conviction or plea agreement."  *Id.* at 820-21 (citations omitted).

[47] Unlike the Ninth Circuit, we do not defer to the BIA's interpretation of the Obstruction Provision.  *Denis*, 633 F.3d at 209.

[48] Would "broad notion[s] of 'obstruction of justice'" cover, for example, money laundering (18 U.S.C. § 1956)?  False statements (18 U.S.C. § 1001)?  Smuggling (18 U.S.C. § 545)?

[49] So while the phrase "relating to" in the Obstruction Provision is certainly broad, we are mindful of both the Supreme Court's warning that these words, "extended to the furthest stretch of their indeterminacy, stop nowhere," and the consequences thereof.  *Mellouli v. Lynch*, 135 S. Ct. 1980, 1990 (2015) (alterations omitted) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655 (1995)).

18

Recognizing these concerns, *Denis* adopted a categorical approach somewhere in the middle of the spectrum: while "[w]e need not determine the precise degree of similarity between the elements of [an alien's] offense and a listed federal crime," [50] we must "survey the interrelationship between the two statutory provisions and apply the phrase 'relating to' broadly, seeking a logical or causal connection."[51] This requirement of a "logical or causal connection" is derived from *Bobb*,[52] where we adopted the dictionary definition of "relate," which means "to show or establish a logical or causal connection between." [53] In *Bobb*, and again in *Denis*, we stressed the "causality" prong of this definition, explaining by way of example that the knowing exchange of stolen or forged Treasury instruments is "relat[ed] to" forgery because, "but for the forged endorsement, there would be no criminal offense." [54] For similar reasons, we found in *Park* that a conviction for trafficking in counterfeit items constituted an aggravated felony "relating to . . . counterfeiting."[55] Therefore, a "causal

---

[50] *Denis*, 633 F.3d at 212.

[51] *Id.* (citations and some quotation marks omitted).

[52] 458 F.3d 213 (3d Cir. 2006).

[53] *Id.* at 219 (internal quotation marks omitted) (citing Webster's Third New International Dictionary (Unabridged) 1916 (1991)).

[54] *Id.*; *see Denis*, 633 F.3d at 211-12 (citing *Bobb* for the proposition that a "'causal connection' may suffice to make the separate crimes related").

[55] *Denis*, 633 F.3d at 211 (citing *Park*, 473 F.3d at 72).

19

connection" requires a link between the alien's offense and a listed federal crime: without the listed federal offense, the alien's offense could not have occurred.

A "logical connection" is also defined by *Denis*. There, we stated that the obstruction-of-justice offense codified at § 1512(c)(1)—which prohibits "corruptly alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding"—was "directly analogous, and thus, logically connected" to New York's tampering statute because both statues focus on "destroying or mutilating evidentiary items in anticipation of their potential production in a prospective proceeding."[56] So while the New York statute in *Denis* and § 1512(c)(1) are not a perfect match in terms of prohibited conduct, *Denis* makes clear that the Obstruction Provision does not require a precise matching of elements given its reference to offenses "*relating to* obstruction of justice." It is enough that the two crimes target the same, core criminal conduct such that they are "directly analogous."[57]

Accordingly, we reject the Government's position and reaffirm *Denis*'s central holding: to determine whether a petitioner's prior offense constitutes an aggravated felony "relating to obstruction of justice," we apply a categorical approach, seeking a "logical or causal connection" between

[56] *Id.* at 213.

[57] *See id.* Indeed, it has been recognized that New York's tampering-with-evidence statute, at issue in *Denis*, and § 1512(c), while not "mirror images," are "essentially similar." *In re Coren*, 905 N.Y.S.2d 62, 63 (N.Y. App. Div. 2010).

an alien's offense and a relevant Chapter 73 offense. "Logical" means that both an alien's statute of conviction and a Chapter 73 statute are directly analogous; "causal" means that, but for a Chapter 73 offense, the alien's offense could not have occurred.

3.

Applying this framework reveals that Flores's accessory-after-the-fact conviction is *not* "relat[ed] to obstruction of justice." In South Carolina, accessory after the fact occurs where the defendant, knowing that a principal has committed a felony, "harbor[s] or assist[s] the principal felon . . . for the purpose of enabling the principal felon to escape detection or arrest."[58] We must compare this South Carolina offense to the federal obstruction offenses listed in Chapter 73 to determine whether Flores's conviction is "relat[ed] to obstruction of justice." Of those offenses, only § 1503 and § 1512(c)(2) contain language that could arguably encompass accessory after the fact.

Section 1503(a) includes a "catchall" provision prohibiting a person from "corruptly or by threats or force . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing]

---

[58] *Legette*, 330 S.E.2d at 294 (citations omitted). The elements of accessory after the fact are: "(1) the felony has been completed; (2) the accused must have knowledge that the principal committed the felony; and (3) the accused must harbor or assist the principal felon." *Collins*, 495 S.E.2d at 204. "The assistance or harboring rendered must be for the purpose of enabling the principal felon to escape detection or arrest." *Legette*, 330 S.E.2d at 294 (citations omitted); *Hooks v. State*, 577 S.E.2d 211, 213 (S.C. 2003), *overruled on other grounds by State v. Gentry*, 610 S.E.2d 494 (S.C. 2005).

to influence, obstruct or impede, the due administration of justice."[59] In *Denis*, we explained that a New York statute prohibiting intentionally tampering with physical evidence to prevent its use in an official proceeding[60] was sufficiently connected to § 1503 to constitute an aggravated felony because both statutes "by their terms, proscribe any behavior that entails the use of force in an effort to impede or obstruct an official proceeding, such as through evidence tampering."[61]

But Flores's conviction does not bear this same type of resemblance to § 1503 and it is therefore not logically or causally connected to accessory after the fact. With respect to a logical connection, both the *mens rea* ("corruptly or by threats or force") and *actus reus* ("influence[], obstruct[] or impede[] . . . the due administration of justice") of § 1503 focus on a defendant's intent and actions with respect to "the due administration of justice." The "due administration of justice," we have held, refers to "a judicial proceeding," and not "some ancillary proceeding, distinct from a judicial proceeding such as an investigation

---

[59] 18 U.S.C. § 1503(a).

[60] This New York statute reads: "Believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person." N.Y. Penal Law § 215.40.

[61] *Denis*, 633 F.3d at 212 (citing cases for the proposition that § 1503 covers evidence tampering).

independent of the court's authority."[62]  In stark contrast, the *mens rea* (intending "the principal felon to escape detection or arrest") and *actus reus* ("harbor[ing] or assist[ing] the principal felon") of Flores's South Carolina offense focus not on a defendant's intent and actions regarding a particular judicial proceeding, but on the principal of a crime.[63]  Put

---

[62] *United States v. Sussman*, 709 F.3d 155, 169 (3d Cir. 2013) (internal quotation marks and alterations omitted) (citing *United States v. Davis*, 183 F.3d 231, 241 (3d Cir. 1999)); *see also United States v. Aguilar*, 515 U.S. 593, 599 (1995) (holding that "[t]he action taken by the accused must be with an intent to influence judicial or grand jury proceedings"). We have explained that the elements of a § 1503 offense are: "(1) the existence of a judicial proceeding; (2) knowledge or notice of the pending proceeding; (3) acting corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice; and (4) the action had the 'natural and probable effect' of interfering with the due administration of justice."  *Sussman*, 709 F.3d at 168 (quoting *In re Impounded,* 241 F.3d 308, 317 n.8 (3d Cir. 2001)).

[63] The dissent places much emphasis on our note in *Denis* that New York's tampering-with-evidence statute applies to defendants "regardless of whether the [defendants'] conduct interfered with a judicial proceeding or a police investigation."  Op. of Shwartz, J. at 6-7 & n.5 (citing *Denis*, 633 F.3d at 212 n.15).  But while a defendant's conduct need not occur during the pendency of a judicial proceeding, the New York statute still mandates a concrete link to official proceedings: the defendant must "[b]eliev[e] that certain physical evidence is about to be produced or used in an official proceeding," and must intend to "prevent such production or use."  N.Y. Penal Law § 215.40; *see also*

another way, these two offenses target completely different criminal conduct. Indeed, there are infinite actions a defendant may undertake with the intent to aid the principal after the commission of a crime, but before the commencement of judicial proceedings, none of which would constitute a violation of § 1503, and all of which could constitute accessory after the fact.[64] So while *Denis* makes clear that the elements of an alien's offense and a Chapter 73 offense need not match precisely to fall within the Obstruction Provision,[65] they must be "directly analogous" such that a "logical connection" exists. In light of the widely

---

*People v. Lewis*, 901 N.Y.S.2d 901 (N.Y. Crim. Ct. 2009); *People v. Berdini*, 845 N.Y.S.2d 717, 721 (N.Y. Crim. Ct. 2007); *People v. Simon*, 547 N.Y.S.2d 199, 203 (N.Y. Crim. Ct. 1989). Here, in contrast, South Carolina accessory after the fact requires no such nexus. *See Collins*, 495 S.E.2d at 204.

In any event, our note in *Denis*, 633 F.3d at 212 n.15, is dictum and does not affect our decision today.

[64] We have held that solely hindering a police investigation—which is criminalized by South Carolina accessory after the fact—plainly does not fall within § 1503's ambit. *See Davis*, 183 F.3d at 239 ("Courts have repeatedly held that an investigation *simpliciter* is not enough to trigger § 1503.").

[65] *Denis*, 633 F.3d at 207, 212-13.

divergent elements between accessory after the fact and § 1503, however, we find no such connection here.[66]

With respect to a causal connection, Flores's accessory-after-the-fact offense does not form the basis of a § 1503 conviction, and a § 1503 offense does not form the basis of an accessory-after-the-fact conviction. As discussed, these crimes are independent: one may be convicted under § 1503 without ever aiding a principal felon, and one may be convicted of South Carolina accessory after the fact without ever interfering with a judicial proceeding. Thus, no causal connection exists.

---

[66] The dissent contends that "the purpose of the accessory after the fact offense is to help the principal avoid facing justice before a court," and therefore "this conduct is related to obstructing the due administration of justice." Op. of Shwartz, J. at 7. The dissent's argument fails for two reasons. First, the "administration of justice," as used in § 1503, means a judicial proceeding, *see Aguilar*, 515 U.S. at 599, so one does not obstruct the "administration of justice" merely by making it more difficult for authorities to move forward with their investigation; a judicial proceeding is a judicial proceeding regardless of how long it takes to commence. Second, the dissent's metaphysical argument echoes the Government's claim (invoking "broad notion[s] of 'obstruction of justice'") and must fail for the same reason: the relevant inquiry is not abstract, but must focus on Congress's intent as embodied by the obstruction-of-justice statutes in Chapter 73 and the Obstruction Provision. Accordingly, the dissent's cited cases—none of which relate to the Obstruction Provision, *Denis*, or the INA—are unavailing. *See* Op. of Shwartz, J. at 8.

A similar analysis applies to § 1512(c)(2). That provision makes conduct criminal where one "corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so."[67] We did not address § 1512(c)(2) in *Denis*, but we stated that § 1512(c)(1)—which prohibits "corruptly alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding"—is "directly analogous, and thus, logically connected" to New York's tampering statute because both statues focus on "destroying or mutilating evidentiary items in anticipation of their potential production in a prospective proceeding."[68]

The same cannot be said of Flores's accessory-after-the fact conviction and § 1512(c)(2). As a threshold matter, § 1512(c)(2) references "any official proceeding," not a judicial proceeding or the "the due administration of justice" as in § 1503. However, this difference is immaterial under *United States v. Tyler*,[69] which held that "in any prosecution brought under a § 1512 provision charging obstruction of justice involving an 'official proceeding,' the government is required to prove a nexus between the defendant's conduct and a particular official proceeding before a judge or court of the United States that the defendant contemplated."[70] Section 1512(c)(2)—which involves "any official proceeding"—clearly falls under our holding in

---

[67] 18 U.S.C. § 1512(c)(2).

[68] *Denis*, 633 F.3d at 213.

[69] 732 F.3d 241 (3d Cir. 2013).

[70] *Id.* at 249-50 (citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005)).

*Tyler*[71] and, therefore, we apply a nexus requirement to § 1512(c)(2).[72]

With § 1512(c)(2)'s nexus requirement in mind, our analysis of this statute closely mirrors our analysis of § 1503, as § 1512(c)(2) is neither logically nor causally connected to accessory after the fact. With respect to a logical connection, both the *mens rea* ("corruptly") and *actus reus* ("obstruct[], influence[], or impede[] any official proceeding") of § 1512(c)(2) focus on a defendant's intent and actions concerning a judicial proceeding. As noted previously, accessory after the fact, in contrast, contains *mens rea* and *actus reus* elements directed toward a defendant's intent and actions regarding the principal of a crime, not a judicial proceeding. Accordingly, as with § 1503, the widely divergent elements between accessory after the fact and § 1512(c)(2) demonstrate that no logical connection exists.

---

[71] *See id.* (favorably citing cases that apply the nexus requirement to § 1512(c)(2)).

[72] Our sister circuits have also applied a nexus requirement to § 1512(c)(2). *See United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015) (applying the nexus requirement to § 1512(c)(2)); *United States v. Bennett*, 664 F.3d 997, 1013 (5th Cir. 2011) (same), *vacated on other grounds*, 133 S. Ct. 71 (2012); *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011) (same); *United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009) (same); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (assuming *arguendo* that the "nexus requirement" applies to §1512(c)(2)); *United States v. Reich*, 479 F.3d 179, 186 (2d Cir. 2007) (Sotomayor, J.) (applying the nexus requirement to § 1512(c)(2)).

Likewise, no causal connection exists between accessory after the fact and § 1512(c)(2): Flores's accessory-after-the-fact offense does not form the basis of a § 1512(c)(2) conviction, and a § 1512(c)(2) offense does not form the basis of an accessory-after-the-fact conviction. Thus, like § 1503, no causal connection exists.

Our conclusion that the Obstruction Provision does not capture Flores's South Carolina conviction is further bolstered by a straightforward review of the Obstruction Provision's statutory text and legislative history. Indeed, at bottom, the categorical approach conducted today is merely a tool of statutory interpretation[73] used to avoid "the practical difficulties and potential unfairness of a factual approach" when analyzing prior convictions.[74] The categorical approach is not talismanic; it does not eclipse or alter our other methods

---

[73] *See James v. United States*, 550 U.S. 192, 214 (2007) (noting that the Court is "engaging in statutory interpretation" by employing the categorical approach), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *Shepard v. United States*, 544 U.S. 13, 23 (2005) (clarifying application of the modified categorical approach and framing the issue as one of statutory interpretation); *Ezell v. United States*, 778 F.3d 762, 766 (9th Cir. 2015) (describing seminal Supreme Court cases on the categorical approach as statutory interpretation cases), *cert. denied,* 136 S. Ct. 256 (2015); *Dickson v. Ashcroft*, 346 F.3d 44, 48 (2d Cir. 2003) (describing the categorical approach as a method of statutory interpretation).

[74] *Taylor v. United States*, 495 U.S. 575, 601 (1990).

of statutory interpretation. As always, our "primary purpose in statutory interpretation is to discern legislative intent."[75]

The Obstruction Provision, on its face, includes all "offense[s] relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness."[76] The term "obstruction of justice" is not alone, but listed in conjunction with "perjury or subornation of perjury" and "bribery of a witness." "[T]his informs our understanding of Congress's intended interpretation of 'obstruction of justice.'"[77] So while "obstruction of justice" may, at its most expansive, be taken to include offenses wholly divorced from any judicial proceeding,[78] the other offenses listed therewith—"perjury or subornation of perjury" and "bribery of a witness"—relate only to conduct that impedes a judicial proceeding.[79] Under

---

[75] *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006).

[76] 8 U.S.C. § 1101(a)(43)(S).

[77] *Valenzuela Gallardo*, 818 F.3d at 821.

[78] *See, e.g.*, *Barlow*, 470 F.2d at 1252-53 ("The gist of being an accessory after the fact lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he has committed the crime."). As noted previously, this passing statement in *Barlow* was not in the Obstruction Provision context, or even the INA context, and the court did not undertake the exhaustive Chapter 73 categorical analysis necessary here. It thus has no bearing on our decision today.

[79] *See* 18 U.S.C. § 201(b)(3)-(4) (criminalizing bribery of a witness); 18 U.S.C. § 1621(1) (criminalizing perjury); 18 U.S.C. § 1622 (criminalizing subornation of perjury).

29

such circumstances, the *noscitur a sociis* canon[80] counsels toward a narrower definition of "obstruction of justice" that does not reach conduct unmoored from judicial proceedings.

Moreover, in adding certain categories of offenses, like the Obstruction Provision, to the list of aggravated felonies in 1996, Congress made an effort "to ensure that the overall reach of the definition would be consistent with the sentencing guidelines."[81] Specifically, "[w]ith only certain limited exceptions," Congress "attempted to ensure that all of the crimes defined as aggravated felonies carry a base offense level of at least 12," in order "to ensure that only the most serious crimes . . . render the alien deportable."[82] But in the United States Sentencing Guidelines of the time, "Obstruction of Justice" had a base offense level of 12,[83] while "Accessory After the Fact" had a base offense level as low as 4.[84] This lends further support to the proposition that Congress did not

---

[80] This canon of statutory interpretation "instructs that when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Yates*, 135 S. Ct. at 1089 (2015) (Alito, J., concurring); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995). Put differently, this canon implements the idea that the meaning of a word should be determined by considering the words with which it is associated in context.

[81] H.R. Rep. No. 104-22, at 7 (1995).

[82] *Id.* at 7-8.

[83] U.S.S.G. § 2J1.2 (1995).

[84] U.S.S.G. § 2X3.1 (1995).

intend accessory-after-the-fact offenses to be considered aggravated felonies.[85]

Consistent with *Denis*'s categorical approach, and our review of the relevant statutory text and legislative history, we conclude that Flores's South Carolina accessory-

---

[85] The dissent argues that, under the Sentencing Guidelines, accessory-after-the-fact offenses are related to obstruction of justice because § 2J1.2 ("Obstruction of Justice") cross-references § 2X3.1 ("Accessory After The Fact"). Op. of Shwartz, J. at 8 n.8. But § 2J1.2's cross-reference only comes into play after § 2J1.2 applies; and § 2J1.2 only applies when the defendant has committed a *bona fide* obstruction-of-justice offense. *See* U.S.S.G. § 1B1.2 cmt. n.1 (1995) ("As a general rule, the court is to use the guideline section from Chapter Two most applicable to the offense of conviction."); *see also* U.S.S.G. App. A (1995) (listing various statutes corresponding to § 2J1.2, including 18 U.S.C. §§ 1503, 1512(c), but not including 18 U.S.C. §§ 2, 3, 4). Thus, § 2J1.2's cross-reference is merely used to "punish more severely (and to provide a greater disincentive for) . . . obstruction of . . . prosecutions with respect to more serious crimes." *United States v. Arias*, 253 F.3d 453, 459 (9th Cir. 2001); *see also United States v. Gallimore*, 491 F.3d 871, 875 (8th Cir. 2007) ("Although § 2X3.1 normally applies to convictions for being an accessory after the fact, in the context of the § 2J1.2(c) cross reference provision, it merely serves as a tool for calculating the base offense level for particularly serious obstruction offenses."); *United States v. Kimble*, 305 F.3d 480, 485 (6th Cir. 2002) (same). Section 2J1.2's cross-reference is therefore fully consistent with Congress's goal to "ensure that all of the crimes defined as aggravated felonies carry a base offense level of at least 12." H.R. Rep. No. 104-22, at 7-8 (1995).

31

after-the-fact conviction is not an offense "relating to obstruction of justice" and therefore constitutes neither an aggravated felony nor a "particularly serious crime" under the INA. She is therefore eligible for withholding of removal.

## B.

Flores also seeks review of the BIA's denial of her CAT application. An applicant for CAT relief must show that it is more likely than not that she would be tortured if she were removed to her home country,[86] and that such torture would be "inflicted by or at the instigation of or with the consent or acquiescence of" a public official.[87] Before both the IJ and the BIA, Flores asserted that it was "more likely than not" that she would face torture if removed. Before the BIA, Flores also stated that she obtained new evidence that her father sought to murder her. But the BIA observed that she never provided this new evidence and concluded that she failed to "meaningfully challenge[ ] . . . the [IJ's] denial of her application for" CAT relief.[88]

In this appeal, Flores does not meaningfully dispute the BIA's conclusion that she failed to appeal the IJ's ruling

---

[86] 8 C.F.R. § 1208.16(c).

[87] *Id.* § 1208.18(a)(1).

[88] App. 30.

on her CAT claim.[89]  As a result, she did not exhaust her CAT claim, and we therefore lack jurisdiction to review it.[90]

### III.

For the foregoing reasons, we conclude that Flores's accessory after the fact conviction is not a "particularly serious crime" within the meaning of the INA and she is therefore eligible for withholding of removal. We also conclude that we lack jurisdiction to review Flores's CAT claim.  Accordingly, Flores's petition is granted in part and dismissed in part, the BIA's decision is vacated in part, and the case will be remanded to the BIA for further proceedings consistent with this Opinion.

---

[89] Pet'r's Br. at 26-27.

[90] 8 U.S.C. § 1252(d)(1); *see Lin v. Att'y Gen.*, 543 F.3d 114, 120-21 (3d Cir. 2008) (explaining that a petitioner must raise all issues before the BIA to exhaust her administrative remedies, and failure to  exhaust all administrative remedies deprives the appellate court of jurisdiction).

SHWARTZ, Circuit Judge, concurring in part, dissenting in part.

I agree with my colleagues that we lack jurisdiction to review Patricia Flores's petition for relief under the Convention Against Torture ("CAT") because she did not dispute the Board of Immigration Appeals' ("BIA") finding that she failed to meaningfully challenge the Immigration Judge's ("IJ") ruling. However, I part company with my colleagues' conclusion that a conviction under South Carolina's accessory after the fact statute does not constitute an aggravated felony. Applying the framework set forth in Denis v. Attorney General, 633 F.3d 201 (3d Cir. 2011), I believe we are required to conclude that South Carolina's accessory after the fact offense is related to obstruction of justice, and it therefore qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(S). As a result, Flores is not entitled to withholding of removal.

I

The Immigration and Nationality Act ("INA") provides a list of offenses that are considered aggravated felonies. 8 U.S.C. § 1101(a)(43). To determine whether a state conviction constitutes an aggravated felony under the INA, we presumptively apply the "formal categorical approach." Ng v. Att'y Gen., 436 F.3d 392, 396 (3d Cir. 2006). Under this approach, we look at the elements of the crime to determine whether it falls within a category

1

enumerated in the INA.[1]  Id. at 396-97.  In general, "[i]f the elements of the aggravated felony generic crimes enumerated in the federal statute are the same as or broader than the elements of the specific criminal statute of conviction, then the specific crime of conviction categorically qualifies as an aggravated felony."  Denis, 633 F.3d at 206.

One category of aggravated felony under the INA is "an offense relating to obstruction of justice . . . for which the term of imprisonment is at least one year."  8 U.S.C. § 1101(a)(43)(S).  In Denis, we observed that the phrase "relating to" must be "read expansively" and "encompass[es] crimes other than those specifically listed in the federal statutes."  Denis, 633 F.3d at 209 (citations omitted); see also Yong Wong Park v. Att'y Gen., 472 F.3d 66, 72 (3d Cir. 2006) (noting that the Supreme Court has defined "relating to" as: "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" (quoting Morales v. Trans World Airlines, 504 U.S. 374, 383 (1992)) (internal quotation marks omitted)).  Mindful of Congress's word choice, the Denis court held that "in deciding whether a conviction is 'related to' another offense . . . crimes of conviction can be 'related to' a listed offense without containing what might be viewed as an essential element."  Denis, 633 F.3d at 210.  Thus, under Denis, the elements of the federal statute and the crime of conviction need not match for the latter to relate to obstruction of justice.  See id. at 211 (stating that "[t]o give effect to Congress's choice of language, a categorical

---

[1] In making this determination, we may not consider the particular facts underlying the conviction.  Restrepo v. Att'y Gen., 617 F.3d 787, 791 (3d Cir. 2010).

matching of the elements of the offense of conviction with the elements of a federal law cannot be the sole test for determining whether a crime of conviction 'relates to' a generic federal offense").  Rather, a "logical" or "causal connection may suffice to make the separate crimes related." Id. at 211-12 (internal quotation marks omitted); see also id. at 212 ("[W]e will survey the interrelationship between [the] two statutory provisions and apply the phrase relating to broadly, seeking a logical or causal connection." (second alteration in original) (internal quotation marks and citation omitted)).  Therefore, our task is to determine whether the state offense is logically or causally connected with the generic federal obstruction of justice offense.[2]

---

[2] My colleagues impose a much higher standard of connection than required in Denis.  For a state offense to be logically connected to a federal obstruction of justice offense, my colleagues conclude that the offenses must be "directly analogous."  Majority Op. 19-20.  In Denis, we did observe that a federal obstruction of justice offense was "directly analogous, and thus, logically connected to Denis's state crime of conviction."  Denis, 633 F.3d at 213.  While it is true that the two offenses at issue in Denis were directly analogous and that directly analogous offenses are also logically connected, nothing in Denis suggests that "direct analogy" is the minimum threshold that is required to establish a logical connection in every case.  Indeed, the plain meaning of the expansive phrase "relating to" in § 1101(a)(43)(s) shows that Congress did not require that the two statutes be "directly analogous" in order to be "related." See Morales, 504 U.S. at 383 ("The ordinary meaning of [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into

3

Chapter 73 of Title 18 of the United States Code is entitled "Obstruction of Justice" and contains more than twenty different offenses.[3]  Most applicable here is 18 U.S.C. § 1503, which provides that "[w]hoever corruptly, or by threats or force, . . . endeavors to influence, obstruct, or impede, the due administration of justice" shall be imprisoned (if the obstruction does not involve a killing or attempted killing) not more than ten years.

---

association with or connection with,' . . . ." (quoting Black's Law Dictionary 1158 (5th ed. 1979))).  Moreover, in Denis we emphasized that our precedent takes a broad reading of the phrase "relating to."  Denis, 633 F.3d at 211.  The "direct analogy" standard that my colleagues rely upon is more than what Denis and the plain meaning of § 1101(a)(43)(s) require.

[3] My colleagues assert that the placement of the federal accessory after the fact section outside of Chapter 73 signifies that it is not an obstruction of justice offense.  I do not think we can draw such a conclusion.  First, the accessory after the fact section, 18 U.S.C. § 3, is placed in the chapter entitled "General Provisions," which includes definitions that are applicable throughout the code.  Second, the accessory after the fact provision falls immediately after the section that addresses principals and aiders and abettors, 18 U.S.C. § 2, and before misprision of a felony, 18 U.S.C. § 4, and conveys that it was placed there to make clear that criminal liability may be imposed upon certain individuals even after the primary offense is completed.  Under § 3's accessory after the fact provision, one may be liable for assisting the offender to prevent his apprehension, trial, or punishment.  There is nothing in the language of these provisions that suggests that one who commits such an offense could not also commit a Chapter 73 obstruction of justice offense.

We have held that obstruction of the "due administration of justice" under § 1503 requires an ongoing judicial proceeding. United States v. Davis, 183 F.3d 231, 239 (3d Cir. 1999).[4] Denis makes clear, however, that the elements of the crime of conviction and the federal offense need not precisely match for the conduct to be logically or causally connected to obstruction of justice. See Denis, 633 F.3d at 206-07 (stating that § 1101(a)(43)(S)'s inclusion of the words "relating to obstruction of justice" makes the

---

[4] The elements of § 1503 are:

> (1) the existence of a judicial proceeding; (2) knowledge or notice of the pending proceeding; (3) acting corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice; and (4) the action had the 'natural and probable effect' of interfering with the due administration of justice.

United States v. Sussman, 709 F.3d 155, 168 (3d Cir. 2013) (citation omitted). Interfering with an investigation conducted by an executive agency, such as the FBI, does not violate the "due administration of justice" clause because those agencies "are not judicial arms of the government 'administering justice.'" United States v. Simmons, 591 F.2d 206, 208 (3d Cir. 1979). Thus, obstruction of an event "distinct from a judicial proceeding such as an investigation independent of the court's . . . authority," Sussman, 709 F.3d at 169 (citation and internal quotation marks omitted), does not violate § 1503.

provision "more descriptive in nature and, thus, slightly more expansive. . . . [R]ather than ascertaining whether the elements of a state crime of conviction match the elements of the generic federal offense with precision, we must only decide that the state conviction 'relates to' the offense criminalized by § 1101(a)(43)(S), namely, obstruction of justice."). Thus, my colleagues' focus on the individual elements of § 1503 and, in particular, the element that requires proof of an ongoing judicial proceeding is inconsistent with Denis. Indeed, in Denis we explicitly rejected the argument that a crime of conviction must require an ongoing judicial proceeding in order to relate to obstruction of justice. There, we reviewed the elements of the New York state evidence tampering statute and concluded that it "related to" the offense set forth in § 1503 because both statutes "proscribe any behavior that entails the use of force in an effort to impede or obstruct an official proceeding, such as through evidence tampering." Id. at 212 (footnote omitted). We explained that, although the New York statute applied "regardless of whether the conduct interfered with a judicial proceeding or a police investigation, and [§] 1503 only pertains to obstruction of judicial proceedings, this distinction does not defeat our 'relating to' analysis" because "our approach does not depend upon matching the elements of the state crime of conviction with the elements of [§] 1503." Id. at 212 n.15 (citations omitted).[5] Instead, "we only

_____

[5] My colleagues characterize this statement in Denis as dictum. Majority Op. 22 n.63. However, in Denis, we held that the New York state evidence tampering statute "related to" § 1503 even though the New York statute could apply in the absence of a pending judicial proceeding. 633 F.3d at 212. Therefore, in Denis, we necessarily held that the

6

consider[ed] the provision to identify the nature of offenses classified as obstruction of justice under federal law for purposes of conducting the 'relating to' examination." Id.

With this in mind, I conclude that the absence of a pending judicial proceeding requirement does not mean South Carolina's accessory after the fact crime is unrelated to obstruction of justice. Under South Carolina law, the crime of accessory after the fact may be committed where the defendant, knowing the principal committed a felony, "harbor[s] or assist[s] the principal felon . . . for the purpose of enabling the principal felon to escape detection or arrest." State v. Legette, 330 S.E.2d 293, 294 (S.C. 1985) (citations omitted).[6] Such an offense impedes law enforcement's efforts to apprehend wrongdoers and prevents courts and

absence of a pending judicial proceeding was not dispositive of the "relating to" analysis. My colleagues suggest that the state crime at issue must nonetheless have a "nexus" to an official proceeding. Majority Op. 22 n.63. In Denis, however, we made no mention of such a nexus requirement. Given the result in Denis, we cannot now conclude that the absence of a judicial proceeding requirement in South Carolina's accessory after the fact crime necessarily defeats any relationship to § 1503.

[6] The Legette court described the elements of accessory after the fact as follows "(1) the felony has been completed; (2) the accused must have knowledge that the principal committed the felony; and (3) the accused must harbor or assist the principal felon. The assistance or harboring rendered must be for the purpose of enabling the principal felon to escape detection or arrest." Legette, 330 S.E.2d at 294 (citations omitted).

7

juries from considering criminal charges against them. Given that the purpose of the accessory after the fact offense is to help the principal avoid facing justice before a court, this conduct is related to obstructing the due administration of justice.[7] Indeed, our court and others have recognized that accessory after the fact is, by definition, an obstruction of justice. See Gov't of V.I. v. Aquino, 378 F.2d 540, 553 (3d Cir. 1967) ("An accessory after the fact is one who, knowing that a crime has been committed, obstructs justice by giving comfort or assistance to the offender in order to hinder or prevent his apprehension or punishment."); see also United States v. Brenson, 104 F.3d 1267, 1286 (11th Cir. 1997) ("The gist of being an accessory after the fact lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he has committed the crime." (citation and internal quotation marks omitted));

---

[7] My colleagues criticize this analysis as being overly "abstract" and criticize the Government's approach for improperly "invoking broad notion[s] of obstruction of justice." Majority Op. 24 n.66 (internal quotation marks omitted). However, this "broad" approach is exactly what is required by the "relating to" analysis set forth in binding precedent. See Denis, 633 F.3d at 212 (explaining that we "apply the phrase 'relating to' broadly, seeking a logical or causal connection"); Yong Wong Park, 472 F.3d at 72 (noting the "broad reach of the term 'relating to[ ]'"); Drakes v. Zimski, 240 F.3d 246, 249 (3d Cir. 2001) (concluding that Congress's inclusion of the phrase "relating to" evidenced "an intent to define [the listed offense] in its broadest sense"); see also Morales, 504 U.S. at 383 (noting that "[t]he ordinary meaning of ['relating to'] is a broad one"). My colleagues' approach reads "relating to" out of the statute.

8

United States v. Brown, 33 F.3d 1002, 1004 (8th Cir. 1994) (same); United States v. Willis, 559 F.2d 443, 444 (5th Cir. 1977) (same); United States v. Barlow, 470 F.2d 1245, 1252-53 (D.C. Cir. 1972) (same).[8]

---

[8] Moreover, contrary to my colleagues' interpretation, the United States Sentencing Guidelines support the view that accessory after the fact is logically connected with obstruction of justice. The background portion of the application notes to the obstruction of justice guideline states that

> [b]ecause the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense, a cross-reference to §2X3.1 (Accessory After the Fact) is provided. Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person.

U.S.S.G. § 2J1.2 cmt. background; see also U.S.S.G. § 2J1.2(c)(1) (stating that "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense, apply §2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined" by applying the provisions of § 2J1.2). Thus, while conviction for an offense under Chapter 73 can trigger § 2J1.2, the Sentencing Commission has acknowledged that one who is an accessory after the fact may obstruct justice

9

For these reasons, <u>Denis</u> requires us to conclude that Flores's conviction for accessory after the fact under South Carolina law is "related to" the obstruction of justice, and that the BIA appropriately designated Flores as an aggravated felon. Because Flores committed an aggravated felony for which she was sentenced to five years' imprisonment, she has committed a "particularly serious crime" and is ineligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(B).

II

For the foregoing reasons, I join my colleagues in dismissing Flores's CAT claim for lack of jurisdiction, but under <u>Denis</u> I would be compelled to deny her petition for review of her application for withholding of removal.

---

and, in such circumstances, should be treated as if he or she committed an obstruction of justice offense.