# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 18-2146, 18-2446

_____

Wilson Cardoza Salazar

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petitions for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 14, 2019
Filed: August 1, 2019

_____

Before BENTON, WOLLMAN, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

The United States Department of Homeland Security ("DHS") determined Petitioner Wilson Cardoza Salazar ("Cardoza") was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because it concluded he was convicted in Iowa of committing an aggravated felony. Cardoza petitions this court and argues his Iowa conviction did

not constitute an aggravated felony and DHS violated his due process rights. We deny Cardoza's petitions.

## I. Background

Cardoza is a native and citizen of El Salvador who illegally entered the United States in approximately 2004. Cardoza has made no claim to United States citizenship or lawful permanent status.

In 2008, Cardoza pled guilty to committing forgery in violation of Iowa Code § 715A.2(2)(b). Cardoza admitted to having a false social security card in his possession. An Iowa court sentenced Cardoza to two years of imprisonment, but the sentence was suspended and Cardoza was placed on probation for two years.

In May of 2018, officials with United States Immigration and Customs Enforcement ("ICE") encountered Cardoza during a vehicle stop. When Cardoza admitted being a citizen and national of El Salvador who was in the United States illegally, the ICE officials arrested Cardoza.

DHS issued Cardoza a Form I-851, Notice of Intent to Issue a Final Administrative Order ("Notice of Intent"), which alleged Cardoza was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) because Cardoza's Iowa forgery conviction was an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(R). The Notice of Intent provided Cardoza a deadline to respond to the charges.

Before Cardoza's deadline expired, DHS received a letter from Cardoza's attorney requesting to inspect DHS's evidence of removability, including documents establishing the existence of the conviction. The letter asserted that under 8 U.S.C. § 1228(b)(4)(C) and 8 C.F.R. § 238.1(c)(2)(ii), Cardoza had an additional ten days to respond after DHS provided the evidence.

Several days later, DHS responded to Cardoza's attorney's letter and provided the requested documents of conviction. But on that same day, DHS issued a Final Administrative Removal Order ("FARO") pursuant to 8 U.S.C. § 1228(b). DHS concluded Cardoza's Iowa forgery conviction was an aggravated felony, and therefore, he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

Cardoza filed a petition for review with this court in May 2018 under docket number 18-2146. Meanwhile, Cardoza's proceedings before DHS continued pursuant to 8 C.F.R. § 208.31[1] because Cardoza expressed a fear he would suffer persecution or torture if he returned to El Salvador. Cardoza met with an asylum officer for a reasonable fear determination. The DHS asylum officer determined Cardoza was not likely to experience persecution or torture if returned to El Salvador. Upon Cardoza's request, the determination was referred to an Immigration Judge ("IJ") for review. After reviewing the record, the IJ issued a decision concurring with the DHS asylum officer's determination. Cardoza then filed a petition for review of the IJ's final order[2] under docket number 18-2446. We consolidated the two cases.

## II. Analysis

Before considering the merits of Cardoza's arguments, we first evaluate our jurisdiction and the scope of our review of both petitions.

---

[1]This procedure is unique to aliens who have (a) either been ordered removed under 8 C.F.R. § 238.1 or whose removal is reinstated under 8 C.F.R. § 241.8; and (b) expressed a fear of returning to their country of removal. *See* 8 C.F.R. § 208.31(a)–(b).

[2]There is no mechanism to appeal to the BIA when the IJ concurs with the asylum officer's determination that the alien does not have a reasonable fear of persecution or torture. *See* 8 C.F.R. § 208.31(g)(1). Thus, the IJ's determination is a final order.

## A. Jurisdiction and Standard of Review

We begin by considering our jurisdiction to review Cardoza's petitions. Congress has provided this court with limited jurisdiction to review orders of removal. 8 U.S.C. § 1252. The statute dictates that courts do not have jurisdiction over certain types of proceedings, including "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [8 U.S.C. §] 1227(a)(2)(A)(iii), (B), (C), or (D) . . . ." 8 U.S.C. § 1252(a)(2)(C).

However, the statute goes on to provide that jurisdiction does exist to review "constitutional claims or questions of law raised upon petition of review filed with an appropriate court of appeals in accordance with this section." *Id.* § 1252(a)(2)(D). The statute later provides that a court may only review a final order of removal if "the alien has exhausted all administrative remedies available to the alien as of right." *Id.* § 1252(d)(1).

Based on this statutory scheme, jurisdiction over docket number 18-2146 (Cardoza's first petition) would not exist because the FARO was not a final order. After DHS issued the FARO, administrative review continued for a reasonable fear determination pursuant to 8 C.F.R. § 208.31. However, this conclusion does not mean we do not have jurisdiction to review the FARO under docket number 18-2446 (Cardoza's second petition). Indeed, the Attorney General concedes we have jurisdiction to decide the issues of whether Cardoza's due process rights were violated and whether Cardoza was convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) because these issues constitute a constitutional question and a question of law.[3]

---

[3]Because of the Attorney General's concession, we need not decide here whether the initially jurisdictionally-defective petition could be "cured" or "ripen" upon the BIA's final order. *See Jimenez-Morales v. U.S. Att'y Gen.*, 821 F.3d 1307, 1309 (11th Cir. 2016) (holding a prematurely-filed petition may, in certain

-4-

## B. Aggravated Felony

We next consider Cardoza's argument that his Iowa forgery conviction does not qualify as an aggravated felony under 8 U.S.C. § 1227(a)(2)(iii). "To determine whether a state . . . conviction is grounds for removal, the adjudicator is required to apply the so-called 'categorical approach.'" *Martinez v. Sessions*, 893 F.3d 1067, 1069 (8th Cir. 2018). This requires us to compare "the elements of the state offense with removable offenses defined by federal law." *Id.* We are required to "assume that the state conviction rested upon nothing more than the least of the acts criminalized by the state statute and then determine whether that state statute fits within the removable offense identified by federal law." *Id.* at 1070. If the state statute of conviction "encompasses the same conduct or less conduct than the federal offense, a conviction under the state statute will be a categorical match." *Id.* In contrast, if the state offense is broader — meaning it criminalizes more conduct than the federal offense — it does not categorically make the offender removable. *Id.*

"In that case, however, if a statute includes multiple, alternative elements that create several different crimes, the statute is considered 'divisible.'" *Id.* We may then look at "a limited class of judicial records" to decide "the crime of which the alien was convicted." *Id.* "After applying this modified categorical approach, if the elements of the offense of conviction fit within the removable offense, the alien is removable." *Id.*

Here, Congress defines "aggravated felony" to include an enumerated list of crimes, including "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R). We have explained that, in order to qualify under § 1101(a)(43)(R), the prior conviction "need not be for

circumstances, become ripe and jurisdiction vest with the appellate court when later agency action makes the initial ruling final).

forgery; the enhancement is appropriate so long as he has a felony conviction that is *related to* forgery." *United States v. Chavarria-Brito*, 526 F.3d 1184, 1185 (8th Cir. 2008) (emphasis added). Other circuits have taken a similarly-expansive approach in considering the words "related to forgery." *See Williams v. Att'y Gen. U.S.*, 880 F.3d 100, 105 (3d. Cir. 2018) (concluding that because Congress included the words "relating to," "Congress intended to define forgery 'in its broadest sense'" (quoting *Drakes v. Zimski*, 240 F.3d 246, 248 (3d Cir. 2001))); *Alvarez v. Lynch*, 828 F.3d 288, 293 (4th Cir. 2016) (noting Congress defined forgery "'expansive[ly]' as merely 'relating to' a generic federal crime," and so it does not require a precise match between the two crimes (quoting *Denis v. Att'y Gen. of U.S.*, 633 F.3d 201, 208 (3d Cir. 2011))).

Because the removable offense under federal law is so broad, in *Chavarria-Brito* we held a forgery conviction under Iowa Code § 715A.2(1)(d) and (2)(a)(4) for possession of forged documents to legally enter, remain, or work in this country constituted an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(R) for purposes of a sentencing enhancement under the United States Sentencing Guidelines. *Chavarria-Brito*, 526 F.3d at 1185. We reasoned a "conviction for the possession of a false document with the intent to perpetrate a fraud or with the knowledge that his possession was facilitating a fraud is related to the false making or material alteration of a document with the intent to deceive for purposes of a sentencing enhancement . . . ." *Id.* at 1186.

The same rationale applies here. Like in *Chavarria-Brito*, Cardoza's forgery conviction under Iowa Code § 715A.2(1)(d) and (2)(b) was for possessing a forged instrument with the intent to perpetuate a fraud or with the knowledge his possession was facilitating a fraud.[4] This "is unarguably an offense '*relating* to' forgery."

---

[4]Cardoza's conviction differs from the conviction at issue in *Chavarria-Brito* because Iowa has classified Cardoza's crime of conviction as an "aggravated

*Chavarria-Brito*, 526 F.3d at 1186 (emphasis added) (quoting *Richards v. Ashcroft*, 400 F.3d 124, 129 (2d Cir. 2005)). It therefore fits comfortably within 8 U.S.C. § 1101(a)(43)(R)'s definition. And this is true of the other subsections in Iowa Code § 715A.2—they *all* categorically relate to forgery. Thus, it is unnecessary to determine whether the statute is divisible for purposes of utilizing the modified categorical approach.

We reject Cardoza's contention that we need not follow the rationale of *Chavarria-Brito,* which he claims has been abrogated by *Descamps v. United States*, 570 U.S. 254 (2013); *Moncrieffe v. Holder*, 569 U.S. 184 (2013); and *Mathis v. United States*, 136 S. Ct. 2243 (2016). Cardoza claims that unlike these Supreme Court cases, the panel in *Chavarria-Brito* did not apply the categorical approach. We disagree. Although the court did not mention the categorical approach by name, the panel's analysis was consistent with the categorical approach. Citing *Taylor v. United States*, 495 U.S. 575, 600 (1990), which applied the categorical approach, the court in *Chavarria-Brito* expressly stated it could "consider only the statute and not other evidence of the crime" and "[t]he mere fact that a state labels a crime as forgery does not control whether his crime is actually related to forgery." *Chavarria-Brito*, 526 F.3d at 1185–86. And recent cases from other circuits decided after *Descamps*, *Moncrieffe*, and *Mathis* have reached similar conclusions as we did in *Chavarria-Britto*. *See Williams*, 880 F.3d at 105; *Alvarez*, 828 F.3d at 293.

_____

misdemeanor" instead of a "Class D felony." This distinction has no bearing on our decision because an aggravated misdemeanor under state law may still qualify as an aggravated felony for purposes of federal immigration law. *See United States v. Figueroa-Alvarez*, 795 F.3d 892, 894–95 (8th Cir. 2015) (holding an Iowa crime classified as an aggravated misdemeanor was still a felony for purposes of 8 U.S.C. § 1326(b)(1) because it met the definition for purposes of immigration law). Cardoza does not contest his conviction came with a punishment of more than one year and therefore it meets the threshold required by 8 U.S.C. § 1101(a)(43)(R).

We hold DHS was correct when it concluded Cardoza's Iowa forgery conviction qualified as an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(iii).

## C. Due Process

We finally consider Cardoza's argument that DHS violated his due process and statutory rights by issuing the FARO before his deadline to respond had expired. To succeed on a due process claim, Cardoza must show fundamental procedural error and prejudice. *See Ramirez v. Sessions*, 902 F.3d 764, 772 (8th Cir. 2018). "To establish prejudice, [Cardoza] must show 'the outcome of the proceeding may well have been different had there not been any procedural irregularities.'" *Id.* (quoting *Tun v. Gonzales*, 485 F.3d 1014, 1026 (8th Cir. 2007)).

Cardoza is correct that DHS violated his rights by issuing the FARO before his deadline to respond had expired. Congress has directed the Attorney General to prescribe regulations that provide due process protections, including that "the alien has a reasonable opportunity to inspect the evidence and rebut the charges." 8 U.S.C. § 1228(b)(4)(C). The Attorney General has promulgated such regulations. *See* 8 C.F.R. § 238.1. The regulations provide:

> If an alien's written response requests the opportunity to review the Government's evidence, the [appropriate service officer] shall serve the alien with a copy of the evidence in the record of proceeding upon which the [appropriate service officer] is relying to support the charge. The alien may, within 10 calendar days following service of the Government's evidence (13 calendar days if service is by mail), furnish a final response in accordance with paragraph (c)(1) of this section.

*Id.* § 238.1(c)(2)(ii). In the written response, the alien may include argument and appropriate evidentiary materials. *See id.* § 231.8(c)(1) and (c)(2)(i).

Here, DHS issued the FARO on the same day it provided the requested evidence to Cardoza's attorney. This violated the above-cited regulation and denied Cardoza the opportunity to rebut the government's position with arguments and evidence. This was a fundamental procedural error and violated Cardoza's due process rights.

The problem with Cardoza's petition, however, is that he cannot show the outcome of his proceeding may well have been different had DHS given him the time necessary to rebut the government's position. As discussed above, our precedent dictates his state-law crime unarguably qualified as an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Considering the precedent, there was nothing Cardoza could have offered that would change the result. Thus, Cardoza cannot establish he was prejudiced and we must deny his petition.

### III. Conclusion

For the foregoing reasons, we deny Cardoza's petitions.

_____